**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: | Chapter 11 |
| Yellow Cab Affiliation, Inc., | Case No. 15-09539 |
| Debtor. | Hon. Carol A. Doyle |

**NOTICE OF MOTION**

   **PLEASE TAKE NOTICE** that on **March 26, 2015 at 11:00 a.m.** or as soon thereafter as counsel may be heard, we shall appear before the **Honorable Judge Carol A. Doyle**, Bankruptcy Judge, in Courtroom 742, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other Judge who may be sitting in her place and stead, and shall then and there present the **MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTOR TO PAY (I) PRIORITY PREPETITION EMPLOYEE OBLIGATIONS, AND (II) PREPETITION WITHHOLDING OBLIGATIONS, AND (B) DIRECTING BANKS TO HONOR RELATED TRANSFERS**, a copy of which is attached and hereby served upon you.

Dated: March 20, 2015

Respectfully submitted,
YELLOW CAB AFFILIATION, INC.

By: */s/ Matthew T. Gensburg*
          Matthew T. Gensburg

Matthew T. Gensburg (ARDC # 6187247)
Martin S. Kedziora (ARDC # 6300162)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
(312) 456-8400
(312) 456-8435 (fax)
gensburgm@gtlaw.com
kedzioram@gtlaw.com

*Proposed Counsel for the Debtor*
*and Debtor-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and **MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER (A) AUTHORIZING DEBTOR TO PAY (I) PRIORITY PREPETITION EMPLOYEE OBLIGATIONS, AND (II) PREPETITION WITHHOLDING OBLIGATIONS, AND (B) DIRECTING BANKS TO HONOR RELATED TRANSFERS** were served upon the parties listed on the service list attached hereto via overnight delivery on March 21, 2015.

          */s/ Matthew T. Gensburg*
          Matthew T. Gensburg

## SERVICE LIST

### VIA UPS OVERNIGHT:

U.S. Trustee
Office of the U.S. Trustee, Region 11
219 S. Dearborn Street, Room 873
Chicago, Illinois  60604

U.S. Attorney's Office
Northern District of Illinois,
Eastern Division
219 South Dearborn, 5th Floor
Chicago, Illinois  60604

Internal Revenue Service
230 S. Dearborn Street
Chicago, Illinois  60604

Robert A. Clifford
Clifford Law Offices
120 North LaSalle Street, 31st Floor
Chicago, Illinois 60602
*Represents Marc Jacobs and Deborah
Jacobs*

Shelly A. DeRousse
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
*Represents Marc Jacobs and Deborah
Jacobs*

QBE/Clarendon National Insurance
Company
411 5th Ave.
New York, NY10016

QBE/Praetorian
Insurance Company
One General Dr.
Sun Prairie, WI 535596

AIG/Lexington
Insurance Company
99 High St, Floor 23
Boston, MA 02110-2378

McClure & Associates
2067 Burlington Ave.
Lisle, IL 60532

Taxi Affiliation Services
3351 W. Addison
Chicago, IL  60618

American Business
Insurance Services Company
32107 Lindero Canyon Rd., Suite 120
Westlake Village, CA 91361

New York Marine and General
Insurance Company
412 Mount Kemble Ave.
Morris Town, NJ 07960

Liberty Mutual
Insurance Company
175 Berkley St.
Boston, MA 02116

Tannen Law Group PC
19 S. LaSalle St.
Suite 1600
Chicago, IL 60603

Taxi Works, LLC
3351 W. Addison
Chicago, IL 60618

First Chicago Insurance Company
6640 S. Cicero Ave.
Bedford Park, IL 60638

Mesirow Financial
353 N. Clark St.
Chicago, Illinois 60654

Stratex Partners
444 N. Michigan Ave., 28th Floor
Chicago, IL 60611

3

Transamerica Financial
Life Insurance Company
440 Mamaroneck Ave.
Harrison, NY 10528

Illinois Insurance
Guaranty Fund
120 S. LaSalle St., Suite 1910
Chicago, Illinois 60603

Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Ave., Suite 200
Chicago, IL 60601

Lucianne Cimino
233 E. Wacker Dr. Suite 305
Chicago, IL 60601

Billy Carter
4823 S. Calumet
Chicago, IL  60615

Courtney Griffin
125 Colony Dr.
Barrington, IL 60010

Vito Rago
1490 Westbourne
Algonquin, IL  60102

Ashley Comforte
1006 Hickory Trail
Downers Grove, IL 60515

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: | Chapter 11 |
| Yellow Cab Affiliation, Inc.,[1] | Case No. 15-09539 |
| Debtor. | Hon. Carol A. Doyle |

**MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER**
**(A) AUTHORIZING DEBTOR TO PAY (I) PRIORITY PREPETITION**
**EMPLOYEE OBLIGATIONS, AND (II) PREPETITION WITHHOLDING**
**OBLIGATIONS, AND (B) DIRECTING BANKS TO HONOR RELATED TRANSFERS**

Yellow Cab Affiliation, Inc., debtor and debtor-in-possession (the "**Debtor**"), files this

Motion (the "**Motion**") pursuant to sections 105, 363, 503, 507(a)(4), 507(a)(5), 541, 1107 and

1108 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"),

and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"), for entry of an order: (a) authorizing, but not directing, the Debtor to pay (i) prepetition

compensation and other amounts owed to the Debtor's current employees up to the relevant

statutory priority cap for each employee and (ii) all related prepetition federal and state

withholding obligations; (b) directing all banks to honor the Debtor's prepetition checks or

electronic transfers for payment of any of the foregoing, and prohibiting banks from placing

holds on, or attempting to reverse, any automatic transfers on account of the foregoing, and (c)

granting related relief.  In support of this Motion, the Debtor respectfully states as follows:

**Status of the Case**

1.      On March 18, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition

for relief under chapter 11 of the Bankruptcy Code.

---

[1]    The last four digits of the Debtor's tax identification number are 6889. The Debtor's business address is 3351
W. Addison, Chicago, IL 60618.

2.      The Debtor has continued in possession of its properties and is operating and managing its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in this case.

## Jurisdiction, Venue, and Statutory Predicates

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §1408.  This matter is core within the meaning of 28 U.S.C. §157(b)(2).

5.      The statutory predicates for the relief sought herein are sections 105(a), 363, 503, 507(a)(4), 507(a)(5), 541, 1107, and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h).

## Background

6.      The Debtor is a licensed taxicab affiliation whose approximately 1600 members operate taxicabs which service the general public in the City of Chicago.

7.      Taxi affiliations, such as the Debtor, are groups of taxi medallion owners organized and required by law to provide the affiliation members with (1) a uniform trade dress and colors, (2) uniform trademarks, (3) insurance, (4) dispatch system, (5) a Chicago business address, (6) a registered telephone number, and (7) a registered agent, among other services.

8.      The Debtor is a licensee and sublicensor of the trademarks, trade dress, and goodwill associated with the operation of the Yellow taxi service in the City of Chicago.

9.      A detailed factual background of the Debtor's businesses and operations, as well as the events precipitating the commencement of these cases, is more fully set forth in the *Declaration of Gary Sakata in Support of the Debtor's Chapter 11 Petition and Request for First*

2

*Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

## I.      Employees

10.      The Debtor operates at 3351 West Addison, Chicago, Illinois 60618.

11.      The Debtor employs approximately twenty five (25) employees (the "**Employees**"). Out of the total of twenty five (25) employees, approximately three (3) are part time workers, while twenty two (22) are full time workers. One (1) of the Employees is salaried and the remaining Employees are paid on hourly basis.

## II.      Wages, Salaries and Payroll Obligations

12.      All Employees are paid wages and salary (collectively, the "**Wages and Salaries**") every Thursday of each week (the "**Payroll Date**") for the prior week's work.  Payroll averages $12,500 in the aggregate, including Payroll Taxes (as defined below).  Eleven (11) Employees are paid through electronic fund transfers, i.e. direct deposit.  Fourteen (14) Employees are paid with paper checks.

13.      The Debtor's last Payroll Date was March 19, 2015 for the prior weekly payroll, and the next Payroll Date is scheduled for March 26, 2015.  The Debtor estimates that, as of the Petition Date, approximately $4,250 in Wages and Salaries have accrued and are owed to Employees, with no Employees owed in excess of $12,475. By this Motion, the Debtor requests the authority to pay all unpaid Wages and Salaries to its Employees in the ordinary course of business.

14.      Mesirow Financial and Stratex Partners ("MyFirstHR") process payroll for the Debtor. MyFirstHR deducts the gross payroll amount from the Debtor's account a few days before the Payroll Date. The Debtor pays MyFirstHR a total of approximately $550 per month on account of payroll administration and certain other payroll related services.  MyFirstHR deducts

3

the weekly fee directly from the Debtor's account.  The Debtor estimates that there are no accrued and unpaid costs in connection with MyFirstHR. By this Motion, the Debtor requests the authority to continue to pay MyFirstHR the weekly fee in the ordinary course of business.

15.     The Debtor, as employer, is required by law to withhold federal, state and local taxes from Wages and Salaries for remittance to appropriate taxing authorities (the "**Employee Taxes**").  In addition, the Debtor is required to pay, from its own funds, social security and Medicare taxes and pay, based on a percentage of gross payroll and subject to state-imposed limits, additional amounts for state and federal unemployment insurance (together with the Employee Taxes, (the "**Payroll Taxes**") and remit the same to the appropriate authorities (collectively, the "**Taxing Authorities**").  For permanent Employees, the Debtor pays Payroll Taxes to various Taxing Authorities in accordance with the Internal Revenue Code and applicable state law.  The Debtor's average one-week total obligation for Payroll Taxes is approximately $1,300. The Debtor seeks authority to honor and process the prepetition obligations with respect to the Payroll Taxes.

### III.     Vacation Time and PTO Days

16.     Employees receive Vacation Days ("**Vacation**") based on their length of service. Vacation for each year accrues and expires on the anniversary date of the original hire. Employees receive (i) 10 days of Vacation after the first full year of service from the date of hire, (ii) 15 days of Vacation after 5 full years of service from the date of hire, and (iii) 20 days of Vacation after 10 full years of service from the date of hire, through retirement.  Employees are not allowed to carry over any unused Vacation into the following 12 month period.

17.     The Debtor also provides Employees with paid personal time off ("**PTO**") after 90 days of service from the date of hire (the "**Probation Period**").  PTO is calculated on a calendar year basis, prorated for each month of service. During an employee's initial year of

4

employment, an employee earns four (4) hours of PTO for each month of service after the

Probation Period. Thereafter, Employees receive twelve (12) hours of PTO on January 1 of each

calendar year, and earn additional four (4) hours of PTO for each month of service. Employees

are allowed to carry over and accumulate unused PTO up to a maximum of twenty (20) days.

18.    PTO may be used for vacation, personal time, illness, or the like. Employees are

not permitted to maintain negative Vacation or PTO.  Accrued, unused Vacation and PTO are

paid out upon separation from the company.  As of the Petition Date, the Debtor estimates there

is approximately $11,000 of accrued and unused Vacation and PTO outstanding. By this Motion,

the Debtor requests authority to continue to honor its Vacation and PTO policies in the ordinary

course of business and to honor all prepetition obligations related thereto.

**IV.    Employee Benefit Plans**

19.    In the ordinary course of business, and as is customary for companies of its size,

the Debtor maintains various employee benefits and policies that provide its Employees with

medical and dental insurance, and other benefits which are described in more detail below

(collectively, the "**Employee Benefit Plans**").  Some of the Employee Benefit Plans are fully

funded by the Debtor, and others are funded either partially or fully through contributions made

by the Debtor.

**A.    Medical, Dental and Vision Plans**

20.    The Debtor offers its Employees a traditional health insurance plan (the

"**Employee Health Plan**") administered by Blue Cross Blue Shield of Illinois ("**Blue Cross**").

The Employee Health Plan is partially funded by the Debtor and partially by the participating

Employees themselves. With respect to Employee Health Plan, the Taxi Affiliation Services,

LLC ("TAS") pays Blue Cross a monthly premium and the Debtor pays TAS it's pro rata share

of the premium for the Debtor's Employees. The Debtor deducts from the participating Employees' paychecks their respective contributions.

21.     In addition, the Debtor offers a dental plan (the "**Dental Plan**") and vision plan (the "**Vision Plan**") administered by Guardian (the "**Guardian**").  The Dental and Vision Plans are fully funded by the participating Employees themselves. With respect to the Dental and Vision Plans, TAS pays Guardian a monthly premium, and the Debtor pays TAS it's pro rata share of the premium for the Debtor's Employees.  The Debtor deducts from the participating Employees' paychecks their respective contributions. Employees are eligible to participate in the Employee Health Plan, the Dental Plan and the Vision Plan after the Probation Period.

22.     The Debtor pays a monthly premium of approximately $8,800 in connection with the Employee Health Plan, the Dental Plan and the Vision Plan, approximately $2,500 of which is funded by withholdings from participating Employees. By this Motion, the Debtor seeks authority to (a) continue to provide the Employee Health Plan, the Dental Plan, and the Vision Plan for its Employees in the ordinary course of business, (b) continue to honor obligations under such benefit programs, including any premiums and administrative fees, and (c) pay all such amounts owed under the Employee Health Plan, the Dental Plan, and the Vision Plan to the extent that they remain unpaid on the Petition Date.

### B.     Basic Life Insurance

23.     The Debtor provides a basic life insurance benefit (the "**Basic Life Insurance**") of $50,000 for all full-time employees who participate in the Employee Health Plan, which includes an Accidental Death and Dismemberment benefit.  The Basic Life Insurance is funded fully by the Debtor. As of the Petition Date, the Debtor estimates there is no accrued and unpaid cost for the Basic Life Insurance. By this Motion, the Debtor seeks authority to pay all

prepetition amounts owed on account of the Basic Life Insurance and to continue its prepetition practices with respect to such benefit.

### C.      Workers Compensation Insurance

24.      The Debtor provides workers' compensation insurance for its Employees at the statutorily required level (the "**Workers' Compensation Program**"), as part of the group policy maintained by TAS. The Workers' Compensation Program covers all Employees and is administered through a workers' compensation insurance policy with First Chicago Insurance Company.  The Debtor pays its pro rata share for the Workers' Compensation Program for the Debtor's Employees.   It is critical that the Debtor be permitted to continue its Workers' Compensation Program. Failure to maintain this insurance could result in the institution of administrative or legal proceedings against the Debtor and its officers and directors and an inability of the Debtor to continue as a going concern. By this Motion, the Debtor requests authority to pay any and all prepetition amounts due or that may become due with respect to the Workers' Compensation Program.  The Debtor further seeks authority to maintain and continue its prepetition practices with respect to the Workers' Compensation Program, including, among other things, allowing workers' compensation claimants, to the extent they hold valid claims, to proceed with their claims under the Workers' Compensation Program.

### D.      Retirement Plan

25.      Employees are eligible to enroll in a 401(k) plan (the "**Retirement Plan**") at the beginning of every quarter of a year after the Probation Period.  Employees may contribute to the Retirement Plan through salary deferrals.  The Debtor does not make matching contributions. Employees are always 100% vested in their personal contributions and cannot forfeit the contributions. The Retirement Plan is administered by Transamerica Retirement Solutions ("**Transamerica**"). The Debtor estimates the amount of accrued and unpaid costs for the

7

administration of the Retirement Plan to be $1,500. By this Motion, the Debtor seeks authority to

continue its prepetition practices with respect to the Retirement Plan.

## V.      Expense Reimbursement

26.      The Debtor does not maintain a formal policy regarding the reimbursement of

business-related expenses.  However, the Debtor reimburses Employees for certain ordinary

course expenses incurred within the scope of the Employees' employment, including travel,

mileage, parking, transportation, cell phone bills, and other miscellaneous expenses (collectively,

the "**Business Expenses**").  All reimbursement requests must be submitted to Gary Sakata along

with the receipts, and Business Expenses are paid in full as soon as is practicable after the

reimbursement request is submitted.   The Debtor estimates that there are no accrued and unpaid

Business Expenses.   By this Motion, the Debtor seeks authority to continue its prepetition

practices with respect to the Business Expenses and to pay all prepetition amounts outstanding in

connection therewith.

## VI.      Prepetition Withholding Obligations

27.      As part of the relief requested herein, the Debtor also seeks authorization to pay

all Employee federal and state withholding and payroll-related taxes relating to prepetition

periods, including, but not limited to, Social Security taxes, unemployment taxes, Medicare

taxes, and garnishments, as well as all other withholdings such as contributions to savings,

retirement or pension plans, insurance contributions, and charitable contributions, if any

(collectively, the "**Withholding Obligations**").  As of the Petition Date, the Debtor estimates

that the amount of accrued and outstanding Withholding Obligations was approximately $1,400.

28.      The Debtor routinely withholds from Employee paychecks the Withholding

Obligations, and is required to transmit these amounts to third parties.  The Debtor believes that

such withheld funds, to the extent that they remain in the Debtor's possession, constitute moneys

8

held in trust and therefore, are not property of the Debtor's bankruptcy estate. Thus, whether or not such funds are prepetition amounts, the Debtor believes that directing such funds to the appropriate parties does not require Court approval. Nevertheless, out of an abundance of caution, the Debtor is seeking Court authority to pay any outstanding amounts owed by the Debtor for Withholding Obligations, in the ordinary course of business, including those incurred prior to the Petition Date.

## Relief Requested

29.     In order to enable the Debtor to maintain morale during this critical time, retain its current Employees, and minimize the personal hardship such Employees may suffer if prepetition employee-related obligations are not paid when due or honored as expected, the Debtor, by this Motion, seeks authority, in its discretion, to pay and honor, as the case may be, (a) all prepetition claims of Employees, including, but not limited to, claims for Wages and Salaries, Vacation and PTO, and certain costs and disbursements related to the foregoing, up to the statutory priority cap of $12,475 per Employee, (b) any claims or payments pursuant to the Employee Benefit Plans, up to the statutory priority cap set forth in section 507(a)(5) of the Bankruptcy Code; and (c) all prepetition federal and state Withholding Obligations (collectively, the "**Employee Obligations**"). The Debtor further requests that the Court enter an order directing all banks to honor the Debtor's prepetition checks or electronic transfers for payment of the foregoing, and prohibiting banks from placing any holds on, or attempting to reverse, any automatic transfers on account of the foregoing.

## Direction to Banks

30.     The Debtor also seeks an order authorizing and directing all banks, including MB Financial Bank, to receive, process, honor, and pay any and all checks or electronic transfers drawn on the Debtor's general disbursement account, including all weekly electronic transfers to

MyFirstHR, related to ordinary course Employee Obligations, whether presented before or after

the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover

such payments.

### Basis for Relief Requested

31.     Courts generally acknowledge that it is appropriate to authorize the payment (or

other special treatment) of prepetition employee obligations in appropriate circumstances. The

Debtor believes that the unpaid wages and other benefits earned within 180 days of the Petition

Date that the Debtor seeks to pay are entitled to priority status under sections 507(a)(4) and

(a)(5) of the Bankruptcy Code and individually do not exceed $12,475 (*i.e.*, the maximum

priority amount under that statute).   Therefore, payment of these prepetition employee

obligations in the ordinary course of business merely accelerates the timing of payment of

obligations that will otherwise be paid in any event, thereby not disrupting the Bankruptcy

Code's priority scheme.

32.     Several sections of the Bankruptcy Code authorize payment of such obligations.

Pursuant to Bankruptcy Code sections 1107(a) and 1108, debtors-in-possession are authorized to

operate the business while maintaining a "fiduciary duty to act in the best interest of the estate as

a whole, including its creditors, equity interest holders and other parties in interest." *LaSalle*

*Nat'l Bank v. Perelman*, 82 F.Supp.2d 279, 292 (D. Del. 2000).  Implicit in the fiduciary duties

of any debtor-in-possession is the obligation to "protect and preserve the estate, including an

operating business's going-concern value." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr.

N.D. Tex. 2002).  Some courts have noted there are instances in which a debtor can fulfill this

fiduciary duty "by the preplan satisfaction of a prepetition claim." *Id*.  The *CoServ* court

specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of the

debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement

10

of the estate." *Id*. In the instant case, the Debtor is operating as debtor-in-possession consistent with Bankruptcy Code sections 1107(a) and 1108 and payment of the Employee Obligations is necessary to protect and preserve the Debtor's business operations. Thus, the Court should authorize the relief requested in this Motion.

33.      Consistent with the Debtor's fiduciary duties, this Court may also grant the relief requested herein pursuant to sections 363(b), 363(c), and 105(a) of the Bankruptcy Code and the "necessity of payment" doctrine (discussed below). 11 U.S.C. §§ 363(b), 363(c), and 105(a). Section 363(b)(1) of the Bankruptcy Code states in pertinent part that: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). If the debtor's determination to use estate assets represents a reasonable business judgment, the bankruptcy court should approve such use.

34.      The "necessity of payment" doctrine authorizes the relief requested in this Motion because the Employees are indispensable to both the Debtor's operations and the successful resolution of these chapter 11 cases. The necessity doctrine may be used "to justify post-petition payment of a wide variety of other types of prepetition claims, as long as payment of those claims will help to stabilize the debtor's business relationships without significantly hurting any party." *See In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999); *In re UNR Indus., Inc.*, 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992) (internal citation omitted), rev'd on other grounds, 173 B.R. 149 (N.D. Ill. 1994); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (necessity-of-payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus").

35.      Indeed, the doctrine applies specifically when, as here, the payment of prepetition claims is critical to the success of the chapter 11 reorganization. For that reason, several courts in

11

this and other districts have authorized debtors to pay prepetition claims of employees for wages, salaries, expenses, and benefits on the ground that the payment of such claims was necessary to effectuate a successful reorganization or liquidation.  *See, e.g.*, *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. Feb. 5, 2013); *In re Corus Bankshares, Inc.*, No. 10-26881 (PSH) (Bankr. N.D. Ill. June 16, 2010); *In re Kimball Hill, Inc.*, No. 08-10095 (SPS) (Bankr. N.D. Ill. Apr. 25, 2008); *In re Neumann Homes, Inc.*, No. 07-20412 (ERW) (Bankr. N.D. Ill. Nov. 21, 2007); *In re Enesco Grp., Inc.*, No. 07-00565 (ABG) (Bankr. N.D. Ill. Jan. 12, 2007); *In re SWOC Liquidating Corp. (f/k/a Serv. Web Offset Corp.)*, No. 06-16700 (CAD) (Bankr. N.D. Ill. Dec. 21, 2006); *In re American Safety Razor Co. LLC, Case No. 10-12351 (MFW)* (Bankr. D. Del. July 30, 2010); *In re Chem Rx Corp., et al., Case No. 10-11567 (MFW)* (Bankr. D. Del. May 13, 2010).

36.    As set forth in the First Day Declaration, the Employees are essential to the continued operation of the Debtor's business, and the Employees' morale directly affects their effectiveness and productivity.  Consequently, it is critical that the Debtor continues, in the ordinary course, those personnel policies, programs, and procedures that were in effect prior to the Petition Date.  If the checks issued and electronic fund transfers requested in payment of any of the compensation or other Employee obligations are dishonored, or if such obligations are not timely paid postpetition, the Employees may likely suffer extreme personal hardship and may be unable to pay their daily living expenses.  A loss of employee morale and goodwill at this juncture would undermine the Debtor's stability, and undoubtedly would have an adverse effect on the Debtor, its customers, the value of its assets and business, and its ability to achieve its objectives in chapter 11.  As noted by the court in *In re Equalnet Communications Corp.*, 258 B.R. 368 (Bankr. S.D. Tex. 2000), "the need to pay pre-petition employee wage claims in an ordinary course of business time frame is simple common sense.  Employees are more likely to

stay in place and to refrain from actions which could be detrimental to the case and/or the estate

if their pay and benefits remain intact and uninterrupted." *Id.* at 370.

37.     As part of the foregoing relief, the Debtor also seeks authority to pay all

Withholding Obligations.  The failure to make such payments may also subject the Debtor and

its officers to federal or state liability. *See City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92 (3d

Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages

created trust relationship between debtor and city for payment of withheld taxes); *DuCharmes &*

*Co. v. Michigan* (*In re DuCharmes & Co.*), 852 F.2d 194 (6th Cir. 1988) (noting the special

liabilities for failure to pay trust fund taxes).  Moreover, the monies payable for amounts held in

trust like the Withholding Obligations generally are not property of a debtor's estate. *See Begier*

*v. IRS,* 496 U.S. 53, 59 (1990) (because the debtor does not own an equitable interest in property

he holds in trust for another, that interest is not "property of the estate").  The failure to transfer

these withheld funds could result in hardship to certain Employees or others.  Furthermore, if the

Debtor cannot remit these amounts, the Employees may face legal action due to the Debtor's

failure to submit these payments.  Finally, payment of Withholding Obligations that constitute

"trust fund" taxes will not prejudice general unsecured creditors of the Debtor's estates as the

relevant taxing authorities would assert priority claims under section 507(a)(8) of the Bankruptcy

Code in respect of such obligations.

38.     The relief requested in this Motion is necessary to the viability of the Debtor's

business and maximization of the value of the Debtor's assets.  Accordingly, the Debtor submits

that the relief sought herein is consistent with sections 105(a), 363(b)(1), 507(a), and 541 of the

Bankruptcy Code.

39.     Nothing in this Motion, nor any payments made by the Debtor pursuant to the

Motion, shall be deemed an assumption or rejection of any Employee Benefit Plan, employment

13

agreement, other program or contract, or otherwise affect the Debtor's rights under section 365

of the Bankruptcy Code to assume or reject any executory contract between the Debtor and any

Employee.

**Bankruptcy Rule 6003 Satisfied and Request for Waiver of Stay**

40.     The Debtor further submits that because the relief requested in this Motion is

necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein

and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief

requested herein should be granted.

41.     Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and
> irreparable harm, the court shall not, within 21 days after the filing of the
> petition, grant relief regarding the following: . . . (b) a motion to use, sell,
> lease, or otherwise incur an obligation regarding property of the estate,
> including a motion to pay all or part of a claim that arose before the filing of
> the petition, but not a motion under Rule 4001.

42.     The failure to receive the requested relief during the first 21 days of this chapter

11 case would severely disrupt the Debtor's operations at this critical juncture and imperil the

Debtor's reorganization.  Accordingly, the Debtor submits it has satisfied the "immediate and

irreparable harm" standard of Bankruptcy Rule 6003 and that the Court should, therefore,

approve the relief requested in this Motion.

43.     The Debtor further seeks a waiver of any stay of the effectiveness of the order

approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[an] order

authorizing the use, sale, or lease of property other than cash collateral is stayed until the

expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."

As set forth above, the relief requested herein is essential to prevent irreparable damage to the

Debtor's operations, going-concern value, and the Debtor's efforts to pursue a sale or restructuring

of its assets and liabilities.

44.     Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003 and 6004(h).

**Notice**

45.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee for the Northern District of Illinois; (b) creditors holding the twenty (20) largest unsecured claims as set forth in the List of Creditors Holding 20 Largest Unsecured Claims filed with the Debtor's petition; (c) those parties requesting notice pursuant to Rule 2002; (d) the Office of the United States Attorney General for the Northern District of Illinois; and (e) the Internal Revenue Service.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

46.     No previous application for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting

the relief requested herein and that it grant the Debtor such other and further relief as is just and

proper.

Dated:  March 20, 2015                              Respectfully submitted,

                                                    YELLOW CAB AFFILIATION, INC.

                                                    By: */s/ Matthew T. Gensburg*
                                                          One of Its Attorneys

Matthew T. Gensburg (ARDC # 6187247)
Martin S. Kedziora (ARDC # 6300162)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
(312) 456-8400
(312) 456-8435 (fax)
gensburgm@gtlaw.com
kedzioram@gtlaw.com

*Proposed Counsel for the Debtor*
*and Debtor-in-Possession*