## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | Chapter 11 |
| Yellow Cab Affiliation, Inc., | Case No. 15-09539 |
| Debtor. | Hon. Carol A. Doyle |

### NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **March 26, 2015 at 11:00 a.m.** or as soon thereafter as counsel may be heard, we shall appear before the **Honorable Judge Carol A. Doyle**, Bankruptcy Judge, in Courtroom 742, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other Judge who may be sitting in her place and stead, and shall then and there present the **MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO MAINTAIN EXISTING INSURANCE POLICIES, PAY ALL POLICY PREMIUMS ARISING THEREUNDER, AND RENEW OR ENTER INTO NEW POLICIES**, a copy of which is attached and hereby served upon you.

Dated: March 20, 2015

Respectfully submitted,

YELLOW CAB AFFILIATION, INC.

By:  _/s/ Matthew T. Gensburg_____
   One of Its Attorneys

Matthew T. Gensburg (ARDC # 6187247)
Martin S. Kedziora (ARDC # 6300162)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
(312) 456-8400
(312) 456-8435 (fax)
gensburgm@gtlaw.com
kedzioram@gtlaw.com

*Proposed Counsel for the Debtor*
*and Debtor-in-Possession*

### CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that true and correct copies of this notice and **MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO MAINTAIN EXISTING INSURANCE POLICIES, PAY ALL POLICY PREMIUMS ARISING THEREUNDER, AND RENEW OR ENTER INTO NEW POLICIES** were served upon the parties listed on the service list attached hereto via overnight delivery, on March 21, 2015.

_____*/s/ Matthew T. Gensburg*_____
Matthew T. Gensburg

### SERVICE LIST

**VIA UPS OVERNIGHT:**

U.S. Trustee
Office of the U.S. Trustee, Region 11
219 S. Dearborn Street, Room 873
Chicago, Illinois  60604

U.S. Attorney's Office
Northern District of Illinois,
Eastern Division
219 South Dearborn, 5th Floor
Chicago, Illinois  60604

Internal Revenue Service
230 S. Dearborn Street
Chicago, Illinois  60604

Robert A. Clifford
Clifford Law Offices
120 North LaSalle Street, 31st Floor
Chicago, Illinois 60602
*Represents Marc Jacobs and Deborah
Jacobs*

Shelly A. DeRousse
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
*Represents Marc Jacobs and Deborah
Jacobs*

QBE/Clarendon National Insurance
Company
411 5th Ave.
New York, NY10016

QBE/Praetorian
Insurance Company
One General Dr.
Sun Prairie, WI 535596

AIG/Lexington
Insurance Company
99 High St, Floor 23
Boston, MA 02110-2378

McClure & Associates
2067 Burlington Ave.
Lisle, IL 60532

Taxi Affiliation Services
3351 W. Addison
Chicago, IL  60618

American Business
Insurance Services Company
32107 Lindero Canyon Rd., Suite 120
Westlake Village, CA 91361

New York Marine and General Insurance
Company
412 Mount Kemble Ave.
Morris Town, NJ 07960

Liberty Mutual
Insurance Company
175 Berkley St.
Boston, MA 02116

Tannen Law Group PC
19 S. LaSalle St.
Suite 1600
Chicago, IL 60603

Taxi Works, LLC
3351 W. Addison
Chicago, IL 60618

First Chicago Insurance Company
6640 S. Cicero Ave.
Bedford Park, IL 60638

Mesirow Financial
353 N. Clark St.
Chicago, Illinois 60654
(312) 595-6000

Stratex Partners
444 N. Michigan Ave., 28th Floor
Chicago, IL 60611

Transamerica Financial
Life Insurance Company
440 Mamaroneck Ave.
Harrison, NY 10528

Illinois Insurance
Guaranty Fund
120 S. LaSalle St., Suite 1910
Chicago, Illinois 60603

Michael Best & Friedrich LLP
Two Prudential Plaza
180 N. Stetson Ave.
Suite 200
Chicago, IL 60601

Lucianne Cimino
233 E. Wacker Dr.
Suite 305
Chicago, IL 60601

Billy Carter
4823 S. Calumet
Chicago, IL  60615

Courtney Griffin
125 Colony Dr.
Barrington, IL 60010

Vito Rago
1490 Westbourne
Algonquin, IL  60102

Ashley Comforte
1006 Hickory Trail
Downers Grove, IL 60515

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: | Chapter 11 |
| Yellow Cab Affiliation, Inc.,[1] | Case No. 15-09539 |
| Debtor. | Hon. Carol A. Doyle |

**MOTION OF THE DEBTOR FOR ENTRY OF AN ORDER**
**AUTHORIZING DEBTOR TO MAINTAIN EXISTING INSURANCE POLICIES,**
**PAY ALL POLICY PREMIUMS ARISING THEREUNDER,**
**AND RENEW OR ENTER INTO NEW POLICIES**

Yellow Cab Affiliation, Inc., debtor and debtor-in-possession (the "**Debtor**"), hereby

files this Motion (the "**Motion**") pursuant to sections 105, 363, 1107 and 1108 of title 11 of the

United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), and Rules 6003 and

6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of

an order authorizing the Debtor to (a) maintain existing insurance policies, (b) pay all policy

premiums arising thereunder, whether prepetition or postpetition, and (c) renew or enter into new

policies as needed, without further order of the Court.  In support of this Motion, the Debtor

respectfully represents as follows:

**Status of the Case**

1.     On March 18, 2015, (the "**Petition Date**"), the Debtor filed a voluntary petition for

relief under Chapter 11 of the Bankruptcy Code.

2.     The Debtor has continued in possession of its properties and is operating and

managing its business as debtor-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

---

[1]     The last four digits of the Debtor's tax identification number are 6889.  The Debtor's business address is 3351
W. Addison, Chicago, IL 60618.

3.      No request has been made for the appointment of a trustee or examiner and a creditors' committee has not yet been appointed in these cases.

## Jurisdiction, Venue, and Statutory Predicates

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §1408.  This matter is core within the meaning of 28 U.S.C. §157(b)(2).

5.      The statutory predicates for the relief sought herein are sections 105, 363, 1107 and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004(h).

## Background

6.      The Debtor is a licensed taxicab affiliation whose approximately 1600 members operate taxicabs which service the general public in the City of Chicago.

7.      Taxi affiliations, such as the Debtor, are groups of taxi medallion owners organized and required by law to provide the affiliation members with (1) a uniform trade dress and colors, (2) uniform trademarks, (3) insurance, (4) dispatch system, (5) a Chicago business address, (6) a registered telephone number, and (7) a registered agent, among other services.

8.      The Debtor is a licensee and sublicensor of the trademarks, trade dress, and goodwill associated with the operation of the Yellow taxi service in the City of Chicago.

9.      A detailed factual background of the Debtor's businesses and operations, as well as the events precipitating the commencement of these cases, is more fully set forth in the *Declaration of Gary Sakata in Support of the Debtor's Chapter 11 Petition and Request for First Day Relief* (the "**First Day Declaration**"), filed contemporaneously herewith and incorporated herein by reference.

2

### Insurance Policies

10.    In the ordinary course of the Debtor's business, the Debtor maintains several insurance policies (collectively, the "**Policies**"). The Policies are administered by third-party insurance carriers and brokers (collectively, the "Insurance Carriers"). A list of the Policies is attached hereto as **Exhibit "A"**.

11.    As required by law, and pursuant to affiliation agreements with its members, the Debtor provides its members with general commercial automobile liability coverage for all taxicabs ("**Taxis**") owned by Debtor's members. To provide this mandatory benefit to its members, the Debtor maintains three separate Policies ("**Auto Liability Policies**") with: (i) Transit General Insurance Company[2] ("**Transit General Policy**") that provides coverage for approximately 1370 Taxis; (ii) New York Marine and General Insurance Company ("**NY Marine Policy**") that provides coverage for approximately 240 Taxis, and (iii) First Chicago Insurance Company ("**First Chicago Policy**"), which provides insurance coverage for six (6) Taxis serving customers with disabilities.

12.    The members are insureds under the Auto Liability Policies. The Debtor is named as the insured. The Debtor pays the premiums for the Auto Liability Policies from the monthly affiliation dues paid by its members. The yearly premium for (i) Transit General Policy is $4,240 per Taxi, subject to a retrospective adjustment, (ii) NY Marine Policy is $4,793 per Taxi, and (iii) First Chicago Policy is $6,400 per Taxi. Premiums with respect to the Transit General Policy are paid by Taxi Affiliation Services LLC ("TAS") as part of the services that TAS provides to the Debtor pursuant to the Services Agreement. The premiums are paid daily, with weekend and

---

[2]    Transit General Insurance Company is owned indirectly by Michael Levine and Patton Corrigan, who also indirectly own Yellow Group, LLC, which own 100% of equity interest of the Debtor.

3

holiday payments paid on the next business day. Premiums for the NY Marine Policy and the First Chicago Policy are generally paid by the Debtor on a monthly basis.

13.    In addition, as required by law, the Debtor maintains a workers' compensation insurance program to provide its members with workers' compensation insurance coverage for claims arising from or related to their employment of individual drivers operating Taxis (the "**Taxi Workers' Compensation Program**"). The Taxi Workers' Compensation Program is administered primarily through workers' compensation insurance policy with First Chicago Insurance Company. On average, 85% of Debtor's members participate in the Taxi Workers' Compensation Program.  The members that participate in the Taxi Workers' Compensation Program pay additional monthly affiliation dues, which the Debtor then uses to pay the premiums for the Workers' Compensation policy. The yearly premium for each Taxi participating in the Taxi Workers' Compensation Program is $1,420. Premiums with respect to the Taxi Workers' Compensation Program are generally paid by the Debtor on a monthly basis.

14.    Separately from the Auto Liability Policies and the Taxi Workers' Compensation Program, which provide coverage primarily for the Debtor's members, the Debtor is an additional named insured on several additional ancillary Policies ("**Ancillary Policies**") maintained by TAS, which provide coverage for, among other things, the general liability and casualty. Premiums for those Ancillary Policies are financed pursuant to premium financing agreement between TAS and First Insurance Funding.

15.    The Policies are essential to the preservation of the Debtor's business, properties, and assets, and in many cases the insurance coverage is required by various regulations, laws, and contracts that govern the Debtor's business. Specifically, the Debtor is required by law and the affiliation agreements, to provide commercial auto liability coverage and Workers' Compensation Program to its members. The Debtor believes it is in the best interests of its estate

4

to permit the Debtor to honor its obligations under its current Policies (including related brokers'
fees).  Allowing these policies to cancel would have severe effect on the Debtor's ability to
provide its members with mandatory insurance coverage, and in effect would jeopardize
Debtor's ability to continue its operations.

16.    By this Motion, the Debtor proposes to pay[3] any prepetition premiums related to
the Policies to the extent that the Debtor might discover and determine, in its discretion, that such
payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or
any form of impairment to the coverage, benefits, or proceeds provided under the Policies. The
Debtor seeks this authority in recognition of the critical necessity of keeping its insurance
policies in effect, and out of concern that the passage of time while the Debtor seeks and obtain
the Court's authority for such a payment may have irreversible adverse consequences for the
Debtor's coverage under the Policies.

17.    If the Debtor is unable to continue making payments on the Policies, Insurance
Carriers may be permitted to terminate certain of the Policies to recoup their losses.
Furthermore, if the Debtor is unable to continue making payments on the Policies, Insurance
Carriers may not allow the Debtor to renew these Policies at the current rates in the future.  The
Debtor would then be required to obtain replacement insurance on an expedited basis and at
great cost to its estate.

18.    Moreover, to the best of the Debtor's knowledge, the First Chicago Insurance
Company is the only insurance carrier that offers workers' compensation insurance coverage to
the businesses in the taxi industry operating in the Chicago metropolitan area. Thus, if the First
Chicago Insurance Company terminated the policy, it would undercut Debtor's ability to

---

3   Nothing herein shall be deemed an admission of payment(s) due or past due or an admission that any contracts
    with respect to insurance providers are or are not executory contracts.

continue its operations and would likely preclude successful reorganization. Finally, even if the Insurance Carriers were not permitted to terminate the Policies, any interruption of payments would have a severe adverse effect on the Debtor's ability to extend current Policies or acquire new insurance coverage in the future.

### Relief Requested

19.    By this motion, the Debtor seeks to (a) maintain existing Policies, (b) pay all policy premiums and brokers' fees arising thereunder, whether prepetition or postpetition, and (c) renew or enter into new policies as needed, without further order of the Court.

### Applicable Authority

20.    The Debtor believes that the payments of all policy premiums are transactions in the ordinary course of business.  Out of an abundance of caution, however, and in the Debtor's reasonable business judgment, the Debtor seeks approval of all Policies and continuation of the payments thereunder.

**A.    Payment of All Policy Premiums Is Necessary in Order
to Comply With United States Trustee Requirements**

21.    The Debtor believes that the ordinary course maintenance of its insurance Policies, including payment of all monthly obligations thereunder, and the renewal of or entry into new policies, without further order of the Court, is necessary and essential to the Debtor's operation of its business during the case, especially where, as here, the Debtor's failure to pay its monthly premium obligations could have negative consequences for its estate and creditors.

22.    Under the terms of the Policies, Insurance Carriers may cancel the insurance policies for nonpayment and may accelerate and declare due and payable the entire unpaid premiums upon the Debtor's failure to pay the monthly premium obligations.  Because the Debtor is required to maintain insurance coverage during its chapter 11 case, the cancellation of

these policies would have material consequences to its business and the bankruptcy process.  *See*

U.S. Trustee's Operating Guidelines at 3 (requiring maintenance of appropriate insurance

coverage).  Even if Insurance Carriers did not immediately cancel the insurance coverage upon

the Debtor's default, the Debtor's failure to pay monthly premium obligations would result in a

depletion of any unearned premium, thereby reducing Insurance Carriers' equity cushion.  *See,*

*e.g., In re Universal Motor Express, Inc.*, 72 B.R. 208, 210 (Bankr. W.D.N.C. 1987); *Schwinn*

*Plan Comm. v. Transamerica Ins. Fin. Corp.*, 200 B.R. 980, 989 (Bankr. N.D. Ill. 1996).

**B.**  **Paying Obligations Under and Renewing Insurance**
**Policies in the Ordinary Course of Business is Warranted**

23.    Section 363 of the Bankruptcy Code provides that '[t]he [debtor], after notice and

a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the

estate." 11 U.S.C. §363(b)(1).  Courts have authorized payment of prepetition obligations under

section 363(b), such as insurance premiums, where a sound business purpose exists for doing so.

See, *Fulton State Bank v. Schipper (In re Schipper)* 780 F.2d 513, 515 (7th Cir.1991) (noting that

a debtor may sell property outside the ordinary course of business if it can provide an articulated

business justification.)

24.    The Debtor submits that renewing and paying obligations under the Policies in the

ordinary course of business is warranted under section 363(b) of the Bankruptcy Code.  As noted

above, the Policies are essential to preserve the value of the Debtor's assets and minimize

exposure to risk.  Furthermore, certain insurance coverage is required by the U.S. Trustee as well

as the City of Chicago pursuant to its various ordinances and regulations.  Failure to maintain

proper insurance coverage would have a material adverse effect on the value of the Debtor's

estate.

**C.     The Debtor Should be Authorized to Pay Insurance Premiums
Under Bankruptcy Code Sections, 105(a), 363(b), 1107(a) and 1108**

25.     Further, the Debtor, operating its business as debtor-in-possession under sections
1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate[s] and
operating the business for the benefit of [its] creditors and (if the value justifies) equity owners."
*In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. W.D. Tex. 2002).  Implicit in the duties of a
chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an
operating business's going-concern value." *Id.*

26.     Courts have noted that there are instances in which a debtor-in-possession can
fulfill its fiduciary duty "only by the preplan satisfaction of a pre-petition claim."  *Id*.  The
*CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid
exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial
enhancement of the estate," and also when the payment was to "sole suppliers of a given
product." *Id*. at 498.

27.     Payment of such claims has often been allowed under the doctrine of necessity, a
well-settled doctrine that permits a bankruptcy court to authorize payment of certain claims prior
to the completion of the chapter 11 process where the payment of such claims is necessary to
preserve and maximize value.  *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999)
(stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the
doctrine of necessity should be invoked to permit payment); *see also In re NVR L.P.*, 147 B.R.
126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition
obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus.,
Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("to justify payment of a pre-petition

8

unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to

the Chapter 11 process").

28.    The Debtor's proposed payment of prepetition policy premiums and brokers' fees

should also be authorized pursuant to the "doctrine of necessity."  Payments of the insurance

premiums are required to maintain or enhance the Debtor's bankruptcy estate.   Insurance

coverage is required by the United States Trustee Operating Guidelines and ordinances and

regulations promulgated by the City of Chicago for taxi affiliations.  Moreover, as a fiduciary for

the bankruptcy estates, the Debtor would be violating its duty if it permitted any of the insurance

policies to lapse.  Accordingly, the Debtor seeks authority to pay all premiums that may become

due, as well as the brokers' fees, if such payment is necessary in the Debtor's judgment in order

to avoid cancellation or interruption of insurance coverage.

29.    Courts in this and other jurisdictions have granted the same or similar relief in

other large chapter 11 cases.  *See, e.g., In re SGK Ventures, LLC (f/k/a Keywell, L.L.C.)*, No. 13-

17603 (ERW) (Bankr.N.D.Ill. Sept. 26, 2013) (authorizing Debtor to pay prepetition premiums

and enter into new insurance policies under section 363(b)); *In re Ryan Int'l Airlines, Inc.*, No.

12-80802 (TML) (Bankr.N.D.Ill. Mar.7, 2012) (same); *In re Hartford Computer Hardware, Inc.,*

No. 11-49744 ((PSH) (Bankr.N.D.Ill. Dec. 15, 2011) (same); *In re CWT Liquidation Co. (f/k/a/*

*The Clare at Water Tower)*, No. 11-46151 (SPS) (Bankr.N.D.Ill. Nov. 16, 2011) (same); *In re*

*Indianapolis Downs, LLC, et al.*, Case No. 11-11046 (BLS) (Bankr. D. Del. April 8, 2011)

(same); and *In re SSI Liquidating, Inc., et al.*, Case No. 10-12795 (KJC) (Bankr. D. Del. Sept. 8,

2010) (same);

30.    Accordingly, the Debtor seeks authorization to maintain its insurance program and

policies, including payment of all monthly obligations, whether prepetition or postpetition, and

to renew or enter into new policies as may be required as the annual terms of existing policies

9

and arrangements expire, including granting liens or security interests required thereunder, without further order of the Court, in the ordinary course of business.[4]

### Bankruptcy Rule 6003 Satisfied,
### and Request for Waiver of Stay

31.    The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein and in the First Day Declaration, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

32.    Specifically, Bankruptcy Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

33.    The failure to receive the requested relief during the first 21 days of this chapter 11 case would severely disrupt the Debtor's operations at this critical juncture and imperil the Debtor's reorganization.  Accordingly, the Debtor submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and that the Court should, therefore, approve the relief requested in this Motion.

34.    The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Rule 6004(h) of the Bankruptcy Rules, "[an] order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."

---

[4]    To the extent that the insurance policies or related agreements may be deemed executory contracts within the meaning of section 365 of the Bankruptcy Code, the Debtor does not at this time seek authority to assume such contracts and the Debtor reserves the right to seek a determination at a later date as to whether any such contracts are executory.

As set forth above, the relief requested herein is essential to prevent irreparable damage to the Debtor's operations, going-concern value, and the Debtor's efforts to pursue a sale or restructuring of its assets and liabilities.

35.    Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003 and 6004(h).

## Notice

36.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee for the Northern District of Illinois; (b) creditors holding the twenty (20) largest unsecured claims as set forth in the List of Creditors Holding 20 Largest Unsecured Claims filed with the Debtor's petition; (c) those parties requesting notice pursuant to Rule 2002; (d) the Office of the United States Attorney General for the Northern District of Illinois; and (e) the Internal Revenue Service. The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

37.    No prior Motion for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE, the Debtor respectfully requests that this Court enter an order granting the relief requested herein and that it grant the Debtor such other and further relief as is just and proper.

Dated: March 20, 2015                                      Respectfully submitted,

                                                           YELLOW CAB AFFILIATION, INC.

                                                           By: _/s/ Matthew T. Gensburg_____
                                                                   One of Its Attorneys

Matthew T. Gensburg (ARDC # 6187247)
Martin S. Kedziora (ARDC # 6300162)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois  60601
(312) 456-8400
(312) 456-8435 (fax)
gensburgm@gtlaw.com
kedzioram@gtlaw.com

_Proposed Counsel for the Debtor_
_and Debtor-in-Possession_

## Exhibit "A"

## List of Insurance Policies

| Type of Policy | Insurance Company | Term | Addresses/Telephone | Expiration Date |
|---|---|---|---|---|
| General, Commercial, Automobile and Liability | Transit General Insurance Company | 12 months | 5450 N. Cumberland Avenue Chicago, IL 60656<br><br>Phone:<br>(773) 557-7663 | 12/31/2014-12/31/15 |
| General, Commercial, Automobile and Liability | New York Marine and General Insurance Company | 12 months | 412 Mount Kemble Avenue Morris Town, NJ 07960<br><br>Phone:<br>(973) 532-1890 | 12/31/2014-12/31/15 |
| General, Commercial, Automobile and Liability | First Chicago Insurance Company | 12 months | 6640 S. Cicero Avenue Bedford Park, IL 60638<br><br>Phone:<br>(708) 552-4400 | 12/31/2014-12/31/15 |
| Worker's Compensation | First Chicago Insurance Company | 12 months | 6640 S. Cicero Avenue Bedford Park, IL 60638<br><br>Phone:<br>(708) 552-4400 | 12/31/2014-12/31/15 |