UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| In Re:<br>Yellow Cab Affiliation, Inc.,<br><br><br><br><br>Debtor(s) | BK No.: 15-09539<br><br>Chapter: 11<br>Honorable Carol A. Doyle |

## ORDER APPOINTING EXAMINER

This matter coming on to be heard on the Unsecured Creditors' Committee's ("Committee") Motion For the Appointment of an Examiner (the "Motion") and with agreement of Yellow Cab Affiliation, Inc. (the "Debtor"); due and adequate notice of the Motion having been given to all parties entitled thereto; the court having considered the Motion and the statements of counsel with respect thereto; all objections to the relief requested in the Motion having been withdrawn or overruled; and the court ("Court") having determined that the appointment of an examiner ("Examiner") is in the best interests of the debtor's ("Debtor's") creditors, equity security holders, and other interests of the Debtor's estate; and the Court being fully advised in the premises;

NOW, THEREFORE, THE COURT ORDERS AS FOLLOWS:

The United States Trustee is hereby directed to appoint an Examiner under section 1104(c) of the Bankruptcy Code (the "Bankruptcy Code") on the following terms and conditions:

I. Scope of Investigation

A. The Examiner shall investigate (a) any and all relationships and transactions between the Debtor and the entities listed on Exhibit "A" hereto (the "Affiliates"), and (b) the structure of the Debtor's overall business enterprise with the Affiliates. As part of that investigation, the Examiner may consider the following:

1. whether the Debtor is paying a fair market price for the goods and services provided to it by the Affiliates or is otherwise receiving reasonably equivalent value for payments made for such goods and services;

2. whether the Debtor is currently being mismanaged and whether the Debtor's management has committed corporate waste;

3. whether the Debtor is complying with the terms of its agreements with the Affiliates;

4. whether the Debtor's post-petition payments to Affiliates leave the Debtor's bankruptcy estate with insufficient cash with which to fund ongoing operations and to pay expenses of administration;

5. the business relationship between the Debtor's medallion-owner/members (the "Members") and the Affiliates;

6. (a) the value and collectability of Debtor's accounts receivable from Chicago Taxi Medallion Management, Inc. and Taxi Medallion Management LLC (the "Accounts Receivable"); (b) how those Accounts Receivable arose; (c) when the Debtor knew or should have known that the Accounts Receivable might be uncollectable; (d) the efforts, if any, undertaken by or on behalf of the Debtor to collect the Accounts Receivable; (e) the Debtor's decision to continue doing business with Taxi Medallion Management, Inc. and Taxi Medallion Management, LLC after the Accounts Receivable became more than 90 days past due; and (f) the involvement of any insider (as defined in section 101 (31) of the Code) of either or both of Taxi Medallion Management, Inc. and Taxi Medallion Management, LLC in any decision of the Debtor regarding (i) collection efforts relating to the Accounts Receivable and (ii) the Debtor's continued provision of services to Taxi Medallion Management, Inc. and Taxi Medallion Management, LLC after each of the Accounts Receivable became more than 90 days past due;

7. (a) the basis and validity of the claims of Taxi Affiliation Services, LLC, Taxi Works, LLC, American United Taxi Affiliation, Inc., Wolley Cab Association, Inc., Metro Cabs 1 LLC and Blue Diamond Taxi Association, Inc. identified on Schedule F of the Debtor's Schedules, as amended, and (b) the reason for the omission of those claims from the Debtor's Schedule F as originally filed;

8. whether Taxi Affiliation Services LLC has a valid right of setoff against the Debtor in the amount of $140,761.08.

9. (a) whether the Debtor (i) made transfers or incurred obligations to the Affiliates, or (ii) engaged in other transactions (such as the creation of the existing corporate structure and out-sourcing services to the Debtor's Affiliates), that might be avoided as preferences or fraudulent transfers (both intentional and constructive), (b) the dates when the Debtor established business relationships with each of the Affiliates and (c) whether the Debtor has other valid and enforceable claims against the Affiliates;

10. whether the Debtor has fully complied with its disclosure obligations under the Bankruptcy Code, Bankruptcy Rules, and other applicable law;

11. whether the Debtor's relationship with one or more Affiliates provides grounds for substantively consolidating the Debtor with those Affiliates;

B. If any party in interest concludes that the scope of the Examiner's investigation should be expanded, such party in interest may file a motion on notice to parties entitled thereto to modify the order appointing the Examiner.

II. Examiner's Professionals

A. The Examiner shall have the right, subject to this Court's order, to retain professionals under section 327(a) of the Bankruptcy Code.

B. The Examiner and any professionals whom the Examiner retains will be compensated in accordance with Bankruptcy Code section 330(a).

III. Examiner's Budget

A. The Debtor, the Committee and the Examiner shall develop a budget for the Examiner's investigation (the "Budget"). Within fourteen (14) days after the Court's entry of the order appointing the Examiner, those parties shall submit, and request Court approval of, that Budget provided, however, that the Examiner may submit its own Budget to the Court if the Examiner cannot agree with either or both of the Debtor and the Committee on the Budget. The Examiner and any professionals whom the Examiner retains will not incur fees or expenses in excess of 105% of the Budget.

B. After the beginning of its investigation, the Examiner may seek Court approval of an amended Budget.

IV. Examiner's Report

A. The Examiner shall file its final report on or before the 60th day following entry of the order appointing the Examiner.

B. The Court may extend the deadline for filing of the Examiner's final report at the request of the Examiner and upon a showing a good cause.

V. Term of the Examiner's Appointment

A. Unless extended by the Court, the Examiner's appointment shall continue until the first to occur of the conclusion of any hearing on the Examiner's report or entry of an order terminating the Examiner's appointment.

VI. Discovery and Privilege Issues

A. The Examiner is authorized, without further order of court, to take discovery (including electronic discovery) under Bankruptcy Rule 2004 of the Debtor or any other person or entity through the issuance of subpoenas under Rule 45 of the Federal Rules of Civil Procedure (made applicable to this case by Bankruptcy Rule 9016). The Court will address discovery disputes, including, without limitation, disputes regarding privilege issues, in accordance with Rule 45 and the Federal Rules of Evidence.

B. The Examiner and any professionals whom the Examiner retains shall execute and agree to be bound by that certain Stipulated Protective Order Pursuant to 11 U.S.C. §§ 105(a) and 107(b) and Fed. R. Bankr. P. 9018 Establishing Procedures for the Protection of Confidential Information Provided by the Debtor to the Official Committee of Unsecured Creditors (the "Protective Order").

VII. Cooperation

The Debtor, the Affiliates and the Committee shall cooperate fully with the Examiner in connection with the investigation and the performance of the Examiner's duties. Such cooperation includes, without limitation, the prompt production of non-privileged documents and information requested by the Examiner, subject to the right of the party producing such documents to raise objections. In addition to the Protective Order, the Examiner is authorized to execute other agreed protective order(s) applicable to a party in interest's documents.

VIII. Coordination

A. Before commencing its investigation, the Examiner shall meet and confer separately with each of the Debtor and the Debtor's professionals, the Committee's professionals, the Affiliates and its professionals, the equity holders and its professionals, the U.S. Trustee, and any other party in interest who has appeared in the case and who wishes to participate in such a meeting.

B. During the term of the Examiner's appointment, the Committee shall temporarily suspend its investigation of any matter within the scope of the Examiner's investigation. Such suspension shall not prevent the Committee and its counsel from (1) cooperating with the Examiner, (2) attending meetings between the Examiner and other entities, if requested by the Examiner, (3) attending hearings relating to the Examiner and the Examiner's investigation, including, without limitation, (a) the appointment of the Examiner, (b) the Budget (including any amendment to the Budget), (c) the Examiner's investigation, (d) the Examiner's report, and (e) the extension or termination of the Examiner's appointment, and (4) initiating or continuing investigation(s) of matters outside the scope of the Examiner's investigation to the extent such investigations are reasonable under the circumstances, (5) prosecuting or defending any pending motions, including, without limitation, (a) the pending motions to compel discovery from the Debtor and the Affiliates and to prohibit transfers to insider or (b) other motions, (6) reviewing documents relating to the scope of the Examiner's investigation, as set forth in Paragraph I of the Order, if requested by the Examiner, and (7) discharging the Committee's statutory duties set forth in the Code, except to the extent such duties fall within the scope of the Examiner's investigation as set forth in Paragraph I of this Order.

C. At the request of the Examiner, counsel for the Committee, the Debtor, the Affiliates, and any interested creditor may attend and/or participate in any depositions conducted by the Examiner.

D. Except as otherwise provided herein, nothing contained in this Order shall diminish the powers and authority of either the Debtor or the Committee under either or both of the Code and the Bankruptcy Rules.

IX. Standing

The Examiner shall be entitled to appear and be heard at any and all hearings in the case.

X. Notification to the Court

Nothing in this Order shall limit the rights of the U.S. Trustee, the Debtor, the Committee, or any other party in interest, to (1) request any other relief, including but not limited to, a request to expand the scope of the Examiner's investigation if, during such investigation, other matters are revealed which the Examiner or any other party in interest believes should be brought to the attention of the Court, and (2) to request that the Examiner's report (or parts thereof) be filed under seal.

Enter:

United States Bankruptcy Judge

Dated: 9/10/15

**Prepared by:**

Rev: 20130104_bko

Matthew T. Gensburg (ARDC # 6187247)
DALE & GENSBURG, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Phone: 312-263-2200
Fax: 312-263-2242
mgensburg@dandgpc.com

Nancy A. Peterman (ARDC # 6208120)
Martin S. Kedziora (ARDC # 6300162)
GREENBERG TRAURIG, LLP
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400
(312) 456-8435 (fax)
petermann@gtlaw.com
kedzioram@gtlaw.com

## EXHIBIT A

1. Taxi Affiliation Services, Inc.;
2. Yellow Group LLC;
3. Taxi Medallion Management LLC;
4. PeopleMover, Inc.;
5. Yellow Cab Partners LLC;
6. Transit General Insurance Co.;
7. Taxi Works LLC;
8. Transit Funding Associates LLC;
9. Transit Funding Associates 2 LLC;
10. Transit Funding Associates 3 LLC;
11. Transit Funding Associates 4 LLC;
12. Transit Funding Associates 5 LLC;
13. Transit Funding Associates 6 LLC;
14. Chicago Taxi Medallion Management, Inc.;
15. American United Taxi Affiliation, Inc.;
16. Blue Diamond Taxi Association, Inc.;
17. Metro Cabs 1 LLC;
18. Illinois Transportation Trade Association Ltd.;
19. First Chicago Insurance Company;
20. McClure & Associates;
21. American Resources Insurance Agency LLC.